UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ICICI BANK LIMITED, NEW YORK BRANCH,
and ICICI BANK UK, PLC,

        Plaintiffs,

 -v-                                              No.  19-CV-11788-LTS-SLC

VISHAL DOSHI, NIHAR PARIKH, SANJAY
SHAH, and HIREN SHAH,

        Defendants.

----------------------------------------------------------------x

MEMORANDUM ORDER

        Plaintiffs ICICI Bank Limited, New York Branch ("ICICI NY") and ICICI Bank UK, PLC ("ICICI UK" and together, "Plaintiffs") bring eight causes of action against Vishal Doshi ("Mr. Doshi"), Nihar Parikh ("Mr. Parikh"), Sanjay Shah ("Mr. S. Shah"), and Hiren Shah ("Mr. H. Shah" and, together, the "Defaulting Defendants").  (Docket entry no. 170 (the "Amended Complaint" or "AC").)  The eight claims arise out of the Defaulting Defendants' alleged participation in a "massive . . . scheme to defraud the Plaintiffs out of millions of dollars through countless sham transactions with various shell companies[.]"  (Id. ¶ 14.)  The Court has jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. section 1331.

        This case is before the Court on Plaintiffs' Renewed Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).  (Docket entry no. 218 (the "Motion").)  Plaintiffs renewed their Motion after, by memorandum order dated March 22, 2024, the Court denied Plaintiffs' motion for default judgment "without prejudice to renewal based on papers augmented to explain why this case is not barred by res judicata."  (Docket entry no. 217 (the

"Order") at 2.) The Court has carefully considered Plaintiffs' submissions in connection with the instant motion. For the following reasons, Plaintiffs' motion for default judgment is denied.

## BACKGROUND

Factual Background

The following recitation of facts is drawn from the Amended Complaint, as well as from the uncontroverted documentary evidence attached to the Amended Complaint and the Motion as exhibits. In light of the Defaulting Defendants' failure to answer the Amended Complaint or respond to (1) the Court's subsequent order permitting Plaintiffs to make a motion for default judgment (see docket entry no. 205) or (2) Plaintiffs' renewed motion practice (see docket entry no. 218), the well-pleaded factual allegations of the Amended Complaint are deemed admitted.

Allegations Related to ICICI NY

"Plaintiff ICICI NY, with offices located at 575 Fifth Avenue, New York, NY 10017, is the duly licensed New York branch of ICICI Bank Limited, a banking corporation incorporated under the laws of India, with headquarters located in Mumbai, India." (AC ¶ 1.) Plaintiffs allege that the Defaulting Defendants, "acting in concert as co-conspirators, engaged in a pattern of racketeering and fraudulent activities spanning the globe from India to the US to Belgium, to the United Arab Emirates, for a period of more than two (2) years, beginning on or about February 15, 2013." (AC ¶ 11.) Specifically, the Amended Complaint alleges that each defendant "submitted . . . fraudulent financial reports" to ICICI NY in order to "induce[] ICICI NY to extend credit facilities" to Simon Golub & Sons, Inc. ("SG") "in the aggregate amount of . . . $20,000,000" by "shift[ing] assets back and forth to and from various entities . . . so as to extract the loan proceeds from SG, as well as the diamonds purchased with said loan proceeds, at
---

"Order") at 2.) The Court has carefully considered Plaintiffs' submissions in connection with the instant motion. For the following reasons, Plaintiffs' motion for default judgment is denied.

## BACKGROUND

Factual Background

The following recitation of facts is drawn from the Amended Complaint, as well as from the uncontroverted documentary evidence attached to the Amended Complaint and the Motion as exhibits. In light of the Defaulting Defendants' failure to answer the Amended Complaint or respond to (1) the Court's subsequent order permitting Plaintiffs to make a motion for default judgment (see docket entry no. 205) or (2) Plaintiffs' renewed motion practice (see docket entry no. 218), the well-pleaded factual allegations of the Amended Complaint are deemed admitted.

Allegations Related to ICICI NY

"Plaintiff ICICI NY, with offices located at 575 Fifth Avenue, New York, NY 10017, is the duly licensed New York branch of ICICI Bank Limited, a banking corporation incorporated under the laws of India, with headquarters located in Mumbai, India." (AC ¶ 1.) Plaintiffs allege that the Defaulting Defendants, "acting in concert as co-conspirators, engaged in a pattern of racketeering and fraudulent activities spanning the globe from India to the US to Belgium, to the United Arab Emirates, for a period of more than two (2) years, beginning on or about February 15, 2013." (AC ¶ 11.) Specifically, the Amended Complaint alleges that each defendant "submitted . . . fraudulent financial reports" to ICICI NY in order to "induce[] ICICI NY to extend credit facilities" to Simon Golub & Sons, Inc. ("SG") "in the aggregate amount of . . . $20,000,000" by "shift[ing] assets back and forth to and from various entities . . . so as to extract the loan proceeds from SG, as well as the diamonds purchased with said loan proceeds, at

the expense of ICICI NY, some of which transactions were financed through letters [of] credit issued by ICICI NY." (Id. ¶¶ 12-14.) "The sole purpose of recording these sham transactions was to increase assets and accounts receivables with sales that were uncollectible, so as to misrepresent to ICICI NY that the outstanding credit facilities were sufficiently secure, creating the perfect cover to extract the diamonds and ICICI NY's money for the Defendants' personal gain, right under ICICI NY's nose." (Id. ¶ 29.)

ICICI NY first discovered this fraud when, "[o]n or about May 23, 2016, based on financial statements provided to ICICI NY by SG, it became apparent . . . that SG was unable to pay" its debt obligations, and "ICICI NY accordingly commenced proceedings in Seattle, Washington on May 31, 2016[,] for the appointment of a Receiver." (Id. ¶¶ 141-42.) "In the course of the Seattle Receivership Proceedings, the Receiver discovered numerous instances of fraud and fraudulent conveyances by SG to certain third parties." (Id. ¶ 143.) For instance, according to a report attached to the Amended Complaint, the Receiver determined that three of the Defaulting Defendants—Mr. Parikh, Mr. Doshi, and Mr. S. Shah—"managed and directed . . . Loose Diamond Sales" that had no "valid business purpose" and instead served to "increase assets (accounts receivable) with sales that were uncollectible" which were then reported to Plaintiffs "as valid collateral." (Docket entry no 170-48 ("Receiver's Report") at 9-10.) "As a result, on August 25, 2016, ICICI NY commenced additional proceedings in Seattle [(the 'Seattle Third Party Proceedings')] against such third parties as defendants. . . ." (AC ¶ 144.) Of the four Defaulting Defendants in the instant action, only Mr. Parikh was named in the Seattle Third Party Proceedings. (See docket entry no. 221-4 ("Seattle TAC" or "Seattle Third Amended Complaint").) ICICI UK was not a party to either of the Seattle Proceedings.

The Seattle Third Amended Complaint alleged, in pertinent part, that:

- "Nihar Parikh . . . is a former Chief Executive Officer and Board Member of Simon Golub & Sons, Inc." (Id. ¶ 10.)

- "ICICI [NY] entered into a Credit Facility Agreement with Simon Golub & Sons, Inc. ("Simon Golub") under which ICICI [NY] loaned Simon Golub up to $20,000,000.00 ('Loan'). The Loan was secured by a Security Agreement against all of Simon Golub's assets." (Id. ¶ 12.)

- "Simon Golub began perpetuating a massive borrowing base fraud against ICICI [NY] and others in which it created over $47 million in false accounts receivable to inflate the Collateral that it reported to ICICI [NY] as part of Simon Golub's borrowing base." (Id. ¶ 23.)

- "As its financial difficulties mounted, Simon Golub sought to transfer its assets to another company for the purpose of that company continuing to operate Simon Golub under a different name and devoid of the financial obligations to ICICI [NY] and other creditors. Simon Golub entered into an Asset Purchase Agreement with IJC under which it sold the SG Brands, along with the SG Brands Marks, SG Brands Domains, SG Brands Social Media, and SG Brands Patent to IJC. Upon information and belief, Nihar Parikh was primarily responsible for negotiating and agreeing to the Asset Purchase Agreement. Under the Security Agreement, Simon Golub was not allowed to sell or transfer the SG Brands Marks, SG Brands Domains, SG Brands Social Media, and SG Brands Patent to IJC." (Id. ¶ 24.)

ICICI NY and all of the named defendants in the Seattle Third Party Proceeding—except for Mr. Parikh—filed a motion for voluntary dismissal, which the court granted. (Docket entry no. 221-5 ("Seattle Stipulation").) Counsel for Mr. Parikh did not sign the Seattle Stipulation, which dismissed all claims against him without prejudice. (Id.) The Amended Complaint notes that the Seattle Receivership Proceedings and the Seattle Third Party Proceedings "resulted in ICICI NY recovering a portion" of the money SG owed. (AC ¶¶ 146-147.)

The Amended Complaint also alleges that, "subsequent to the Seattle Proceedings, ICICI NY obtained affidavits from two key employees" that "unequivocally state that the Defendants were engaged in a widespread and global fraud[.]" (Id. ¶ 149.) These affidavits, attached as exhibits to the Amended Complaint, were submitted in a previous action brought in this District. (See docket entries no. 170-49, 170-50.) In that lawsuit, Plaintiffs

brought nearly identical claims against a number of defendants who worked at SG or its parent company, including Mr. Parikh and the other three Defaulting Defendants in this action, alleging that all had engaged in a conspiracy. See Complaint, docket entry no. 5, ¶ 15, ICICI Bank Ltd., N.Y. Branch v. Vishal Doshi, et al., No. 18-CV-9128-VSB (S.D.N.Y. Oct. 5, 2018) ("The Defendants, acting in concert as co-conspirators, engaged in repeated RICO violations in a pattern of racketeering and fraudulent activities spanning the globe . . . ."). Plaintiffs voluntarily dismissed that action (the "First S.D.N.Y. Action") against all defendants the day before filing the instant action. See Notice of Voluntary Dismissal, docket entry no. 61, ICICI Bank Ltd., N.Y. Branch, et al v. Vishal Doshi, et al., No. 18-CV-9128-VSB (S.D.N.Y. Dec. 23, 2019).

Allegations Related to ICICI UK

"Plaintiff ICICI UK is in the business of banking, registered at Companies House in England with the number 04663024 and having its registered office at One Thomas More Square, London E1W 1YN. ICICI UK is authorized by the Prudential Regulatory Authority ('PRA') and regulated by the PRA and the Financial Conduct Authority." (AC ¶ 2.) The Amended Complaint alleges that, "utilizing the very same shell companies. . ., the Defendants perpetrated a strikingly similar fraud upon ICICI UK" as they did upon ICICI NY "by presenting fraudulent receivables documents . . . which fraudulently induced ICICI UK to extend and continue a loan facility . . . in the amount of $5,000,000.00." (Id. ¶ 15.) While the Amended Complaint states that "[e]ach Defendant is subject to the personal jurisdiction of this Court because each Defendant has voluntarily subjected himself to the jurisdiction of this Court; regularly transacts business within the State of New York, and/or has purposefully availed himself of the jurisdiction of this Court for the specific transactions at issue" (id. ¶ 10), there are

no allegations in the Amended Complaint tying Defendants' transactions with ICICI UK to New York (see id. ¶¶ 151-60).

Procedural History

Plaintiffs initiated the instant action on December 24, 2019, against seventeen corporate and individual defendants. (Docket entry no. 5 (the "Complaint").) Most of the original defendants—including the four Defaulting Defendants—are residents of India. (Id. ¶¶ 3-7, 10-11, 13-18.) Because Plaintiffs were unable to serve these defendants under the Hague Convention, they requested and received permission to serve them via WhatsApp, LinkedIn messenger, Facebook messenger, and/or email. (See docket entries no. 71, 191.) Only two of the individual defendants in this case—Apoorva Doshi and Ami Doshi—appeared in this action; they reached a settlement with Plaintiffs and were dismissed from this case. (Docket entry no. 75.)

After the Clerk's office issued certificates of default against the fifteen defendants who remained in the case and had not yet appeared, Plaintiffs moved for default judgment for the first time. (Docket entry no. 138.) In an oral ruling from the bench, Judge Abrams—to whom this action was initially assigned—denied the motion for default judgment on the grounds that the Complaint did not adequately allege a violation of RICO to the extent that it failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b). (Docket entry no. 174 ("Hrg. Tr.") at 3-8.)[1] Judge Abrams further emphasized that "[t]he Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including the amount of money potentially involved." (Id. at 7.)

---

[1] Judge Abrams also "decline[d] to exercise supplemental jurisdiction over [Plaintiffs'] state law claims" because "there is not complete diversity between the parties," and "subject matter jurisdiction hinges on a federal cause of action." (Hrg. Tr. at 8.)

Plaintiffs subsequently filed the Amended Complaint and voluntarily dismissed the action against eleven of the defendants. (Docket entries nos. 158, 173.) Only the Defaulting Defendants now remain in the case. (Id.) After the Defaulting Defendants were served with the Amended Complaint (see docket entries nos. 177, 178, 179, 192) and failed to respond, the Clerk's office issued certificates of default against them (docket entries nos. 201, 202, 203, 204). The Court ordered Plaintiffs to move for default judgment by October 21, 2023 (docket entry no. 205), and Plaintiffs filed their second motion for default on October 23, 2023 (docket entry no. 206). Plaintiffs filed Certificates of Service indicating that they served the Defaulting Defendants with that motion (docket entries nos. 211, 212, 213, 214, 215, 216), but the Defaulting Defendants did not respond.

In its Order denying Plaintiffs' motion without prejudice, the Court concluded that, "[t]aken together, the Seattle Third Party Proceedings and the First S.D.N.Y. Action appear to warrant dismissal of this action on the basis of res judicata and the 'two dismissal rule'" articulated in Federal Rule of Civil Procedure 41(a)(1)(B). (Order at 8-9.) For that reason, "the Court denie[d] Plaintiff's motion for default judgment without prejudice to renewal based on papers augmented to show why this Court should not treat the voluntary dismissal of the First S.D.N.Y. Action as an adjudication on the merits that compels denial of any default judgment and dismissal of this case with prejudice[.]" (Id. at 10.) Plaintiff timely filed their renewed motion for default judgment—requesting that the Court enter judgment by default against the Defaulting Defendants in the amount of $120,115,786.60—with supplemental papers to address the res judicata issue. Plaintiffs again filed Certificates of Service indicating that they served the Defaulting Defendants with the Motion (docket entries nos. 224, 225, 226, 227), but the Defaulting Defendants again failed to respond.

## DISCUSSION

Federal Rule of Civil Procedure 55 provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," and after entry of default, a default judgment may be entered against such person. FED. R. CIV. P. 55(a), (b)(2). Courts must "supervise default judgments with extreme care to avoid miscarriages of justice." Premium Sports Incorporated v. Alzate, No. 10-CV-01982-CBA, 2011 WL 1240558 at *3 (E.D.N.Y. Feb. 25, 2011) (quoting Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). In determining whether to grant a motion for default judgment, the Court considers three factors: "(1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Santana v. Latino Express Restaurants, Inc., 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (citation omitted); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court grant of a default judgment).

Here, the Court finds that only two of the three factors weigh in Plaintiffs' favor. First, Defendants' "failure to respond to the . . . Complaint and failure to respond to the default judgment motion practice are indicative of willful conduct." Bldg. Serv. 32BJ Pension Fund v. 1180 AOA Member LLC, No. 18-CV-12226-LTS-OTW, 2020 WL 70947, at *2 (S.D.N.Y. Jan. 3, 2020). Likewise, Plaintiffs will be prejudiced and left with no alternative recourse if they are denied judgment by default, because Defendants have willfully failed to participate in this action. See id. It is apparent from the face of the pleadings and Plaintiffs' augmented papers, however, that the Defaulting Defendants have meritorious defenses to Plaintiffs' claims.

Based on the allegations in the Amended Complaint and the attached exhibits, the Court's previous Order observed that "the record suggests that this action is barred by res judicata and the 'two dismissal rule' articulated in Federal Rule of Civil Procedure 41(a)(1)(B)." (Order at 6.)  In their supplemental brief (docket entry no. 222 ("Supp. Br.")), Plaintiffs argue that the two-dismissal rule and res judicata do not bar the above-captioned case for several reasons, but not one of their arguments is sufficient salvage their claims.  While the two-dismissal rule and res judicata only bar ICICI NY's claims against the Defaulting Defendants, Plaintiffs' arguments related to ICICI UK's claims reveal that the Court lacks personal jurisdiction over the Defaulting Defendants with respect to those claims.  The Court discusses each Plaintiff's claims in turn.

ICICI NY

Plaintiffs' augmented papers confirm the Court's suspicion that ICICI NY is barred from bringing this action by res judicata and the "two dismissal rule" articulated in Federal Rule of Civil Procedure 41(a)(1)(B).[2]  Res judicata, or claim preclusion, "prevents litigation of all grounds for recovery . . . that were previously available to the parties, regardless of whether they were asserted or determined in [a] prior proceeding." Bin Saud v. Bank of N.Y., 734 F. Supp. 628, 632 (S.D.N.Y. 1990), aff'd sub nom. Saud v. Bank of N.Y., 929 F.2d 916 (2d Cir. 1991).  While Federal Rule of Civil Procedure 41(a)(1)(A)(i) permits a plaintiff to voluntarily dismiss an action without prejudice, a notice of voluntary dismissal "operates as an adjudication on the merits"—and may therefore trigger res judicata—if "the plaintiff previously

---

[2] Although the Defaulting Defendants failed to answer the Amended Complaint or otherwise raise a res judicata defense, "a court is free to raise th[e] defense [of res judicata] sua sponte, even if the parties have seemingly waived it." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 398 n. 4 (2d Cir. 2003).

dismissed any federal- or state-court action based on or including the same claim." FED. R. CIV. P. 41(a)(1). "This principle is often referred to as the 'two dismissal rule,' . . . and exists primarily 'to prevent delays and harassment caused by plaintiffs securing numerous dismissals without prejudice[.]'" Jian Ying Lin v. Shanghai City Corp, 329 F.R.D. 36, 38-39 (S.D.N.Y. 2018) (citations omitted), aff'd, 950 F.3d 46 (2d Cir. 2020). The Second Circuit has specifically "h[e]ld that a second action is 'based on or includ[es] the same claim' for purposes of Rule 41(a)(1)(B) whenever it arises from the same transaction or occurrence as the first action." Jian Ying Lin, 950 F.3d at 50.

First, Plaintiffs argue that the two-dismissal rule is inapplicable to ICICI NY's claims because the Seattle Third Party Proceeding "was not dismissed based upon the 'unilateral' action of the plaintiffs—it was dismissed by a joint motion of the appearing parties and subsequent court order, executed by the Hon. Judge James Cayce." (Supp. Br. 9 (emphasis omitted).) The Second Circuit has made clear that "the filing of a notice of dismissal preceded by a dismissal by stipulation knowingly consented to by all parties does not activate the 'two dismissal' bar against bringing an action based on or including the same claim." Poloron Prods., Inc. v. Lybrand Russ. Bros. & Montgomery, 534 F.2d 1012, 1018 (2d Cir. 1976). The Seattle Stipulation, however, was not "consented to by all parties" because Mr. Parikh's counsel did not sign it. (See Seattle Stipulation at 2); see also Tate v. Riverboat Servs., Inc., 305 F. Supp. 2d 916, 925 (N.D. Ind. 2004) (applying two-dismissal rule where "stipulation to dismissal" was not signed by all parties). Therefore, the two-dismissal rule applies to this action.

Second, while Plaintiffs "concede that both the First SDNY Action and this action arise from the same series of transactions[,]" they argue that res judicata does not bar ICICI NY's claims if the two-dismissal rule applies because "the Seattle Action involves a totally

different series of fraudulent transactions." (Supp. Br. 14.) Plaintiffs argue that this action, on one hand, brings claims related to "the New York Fraudulent Transactions," a "series of fraudulent transactions [that] occurred between February 2013 and March 2015 and was premised upon fraudulent borrowing base certificates and sham letter of credit transactions, which were designed, controlled and operated by the NY Defendants, so as to steal $20,000,000.00 [from] ICICI NY, in gross violation of the Credit Agreement." (Id. at 15-16.) On the other hand, Plaintiffs emphasize that the Seattle Third Party Proceeding brought claims related to the "Seattle Fraudulent Transactions," a "series of fraudulent transactions [that] occurred between April 15, 2016 and February 1, 2017 . . ., whereby the Seattle Defendants fraudulently conveyed SG's intellectual property and hard assets to affiliated entities, so as to render SG judgment-proof, and enable SG to avoid its creditors, including, but not limited to, ICICI NY, in gross violation of the Security Agreement (not the Credit Agreement)." (Id. at 16.)

The distinction that Plaintiffs point out, however, does not render res judicata inapplicable. "New York law precludes relitigation of claims that arise from the same factual groupings describing the wrong upon which the action is grounded," and "what factual 'grouping' constitutes a transaction or series of transactions depends on how 'the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Singh v. Parnes, 199 F. Supp. 2d 152, 158 (S.D.N.Y. 2002) (citing Smith v. Russell Sage College, 54 N.Y.2d 185, 192-93 (1981)).[3] Here, the New York Fraudulent Transactions and the

---

[3]  Similarly, the Second Circuit has articulated this test as follows: "'if the pleadings framing the issues in the first action would have permitted the raising of the issue sought to be raised in the second action, and if the facts were known, or could have been known to the plaintiff in the second action at the time of the first action,' then the claims in the second action are precluded." AmBase Corp. v. City Investing Co. Liquidating Tr., 326

later Seattle Fraudulent Transactions constitute a factual grouping for the purposes of res judicata because both relate to the same $20,000,000 loan. While Plaintiffs allege that the New York Fraudulent Transactions were perpetrated "to steal $20,000,000.00 [from] ICICI NY," they also allege that the Seattle Fraudulent Transactions were perpetrated "to avoid liability" for the theft that Defaulting Defendants allegedly perpetrated through the New York Fraudulent Transactions. (Supp. Br. at 15-16.) Plaintiffs' own briefing, therefore, makes clear that the two sets of fraudulent transactions share the same origin and motivation. Likewise, the New York Fraudulent Transactions were allegedly conducted "in gross violation of the Credit Agreement"—the same agreement that was secured by the Security Agreement that the Seattle Fraudulent Transactions allegedly violated. (Id. at 15-16; see also Seattle TAC ¶ 12.) Because the two agreements are linked in this fundamental way, treating fraudulent transactions that violated one or the other as a single grouping "conforms to the parties' expectations or business understanding or usage." Singh, 199 F. Supp. 2d at 158 (quoting Smith, 54 N.Y.2d at 192-93). Simply put, ICICI NY's claims related to the Seattle Fraudulent Transactions and the New York Fraudulent Transactions should be treated as a unit because, in each case, ICICI NY has sought to recover the same $20,000,000 loan. Accordingly, res judicata bars ICICI NY's claims in this action.

---

F.3d 63, 73 (2d Cir. 2003) (citation omitted). Because the Seattle Third Amended Complaint explicitly references the New York Fraudulent Transactions, ICICI NY clearly knew the facts underlying their claims raised in this action when the Seattle Third Party Proceeding was being litigated. (See Seattle TAC ¶ 23 ("Simon Golub began perpetuating a massive borrowing base fraud against ICICI and others in which it created over $47 million in false accounts receivable to inflate the Collateral that it reported to ICICI as part of Simon Golub's borrowing base.").) Therefore, res judicata bars ICICI NY's claims in this action.

Third, Plaintiffs argue that "the Seattle Fraudulent Transactions did not involve any of the NY Defendants, but Nihar, who is only mentioned in two sentences in the entire Seattle Amended Complaint[.]" (Supp. Br. at 16.) For the reasons stated above, however, the Seattle Fraudulent Transactions and the New York Fraudulent transactions arise from the same factual grouping for the purposes of res judicata. Moreover, as the Court made clear in its last order, "[t]he fact that only Mr. Parikh was named as a defendant in the Seattle Third Party Proceeding does not alter th[e] conclusion" that ICICI NY's claims against all four Defaulting Defendants are barred by res judicata. (Order at 9; see also id. at 10 ("Because the Amended Complaint alleges that all four Defaulting Defendants 'act[ed] in concert as co-conspirators' in this 'RICO action' (AC ¶ 11), it demonstrates that the three Defaulting Defendants who were not named in the Seattle Third Party Proceeding—Mr. Doshi, Mr. S. Shah, and Mr. H. Shah—are in privity with Mr. Parikh, who was named in that action.").) Critically, Plaintiffs did not provide any argument—other than conclusory statements about how "vastly different" the schemes were—to demonstrate why the three Defaulting Defendants who were not named in the Seattle Third Party Proceeding are not in privity with Mr. Parikh, who was named in that action. (Supp. Br. at 17.) For the reasons stated above and in the prior Order, the Court concludes that the four Defaulting Defendants are in privity for the purposes of res judicata.

Because the two-dismissal rule and res judicata bar ICICI NY's claims against the Defaulting Defendants, the Court denies the motion for default judgment as to ICICI NY's claims and concludes that, because ICICI NY's claims against the Defaulting Defendants are precluded as a matter of law, they must be dismissed with prejudice for failure to state claims upon which relief may be granted.

ICICI UK

Plaintiffs argue that the two-dismissal rule cannot bar ICICI UK's claims in this action because (1) its claims related to a "series of fraudulent transactions that occurred between March 11, 2010 and June 30, 2015, wherein Defendants in this action perpetrated a fraud upon ICICI UK by presenting fraudulent receivables documents . . . which fraudulently induced ICICI UK to extend and continue a loan facility . . . in the amount of $5,000,000[,]" and (2) "ICICI UK was not a named plaintiff in the Seattle Action[.]"  (Supp. Br. 15-17.)  While those arguments demonstrate that the two-dismissal rule and res judicata do not bar ICICI UK's claims in this action, highlighting the differences between the Seattle Third Party Proceeding and this action reveals a different fatal problem with ICICI UK's claims.  Namely, because Plaintiffs have made clear that the fraudulent transactions involving ICICI NY did not overlap with those involving ICICI UK, it appears that the Court does not have personal jurisdiction over the Defaulting Defendants with respect to ICICI UK's claims.

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s]."  Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010).  "A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013) (internal quotations and citation omitted).  The court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs."  Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013).  Plaintiffs, however, "cannot establish jurisdiction through conclusory assertions alone." Berdeaux v. OneCoin Ltd., 561 F. Supp. 3d 379, 395 (S.D.N.Y.

2021) (quoting Cont'l Indus Grp. v. Equate Petrochemical Co., 586 F. App'x 768, 769 (2d Cir. 2014)).

"There are two types of personal jurisdiction: specific and general." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014). "A court with general jurisdiction over a [defendant] may adjudicate all claims against that [defendant]—even those entirely unrelated to the defendant's contacts with the state." Id. (emphasis in original). Specific jurisdiction, on the other hand, is "conduct-linked jurisdiction," id., and a "plaintiff asserting specific personal jurisdiction 'must establish the court's jurisdiction with respect to each claim asserted,'" Fire & Police Pension Ass'n of Co. v. Bank of Montreal, 368 F. Supp. 3d 681, 693 (S.D.N.Y. 2019) (quoting Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004)). Courts conduct a two-part inquiry to determine whether the assertion of personal jurisdiction is appropriate: "First, [the Court] determine[s] whether the defendant is subject to jurisdiction under the law of the forum state—here, New York. Second, [the Court] consider[s] whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." Sonera, 750 F.3d at 224.

General Jurisdiction

Under New York Civil Practice Laws and Rules ("N.Y. C.P.L.R.") section 301, a court can exercise general jurisdiction when a defendant has "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in [New York]." McGowan v. Smith, 52 N.Y.2d 268, 272 (1981) (citation omitted). To warrant the exercise of general jurisdiction, New York law requires that the defendant be present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)

(citations omitted).  But even if N.Y. C.P.L.R. section 301 is satisfied, courts must also ensure that the exercise of general jurisdiction comports with due process, which requires that a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).  For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  Daimler, 571 U.S. at 137 (quoting Goodyear, 564 U.S. at 924).  Because the Defaulting Defendants are all domiciled in India, and the Amended Complaint includes no allegations indicating that they are "at home" in New York, the Court cannot exercise general jurisdiction over them.

### Specific Jurisdiction

New York's long-arm statute permits courts to exercise specific jurisdiction "over any non-domiciliary" who

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state . . .; or

3. commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).  The statute also requires that the cause of action must "aris[e] from" one of the acts enumerated above.  Id.  The "arising from" requirement is satisfied if a plaintiff shows a "substantial relationship" or "articulable nexus" between the claim being asserted and

the actions taken in the forum state.  Group One Ltd. v. GTE GmbH, 523 F. Supp. 3d 323, 336 (E.D.N.Y. 2021) (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007)).

While the Amended Complaint states that "[e]ach Defendant is subject to the personal jurisdiction of this Court because each Defendant has voluntarily subjected himself to the jurisdiction of this Court; regularly transacts business within the State of New York, and/or has purposefully availed himself of the jurisdiction of this Court for the specific transactions at issue" (AC ¶ 10), there are no allegations in the Amended Complaint indicating that any part of the Defaulting Defendants' transactions with ICICI UK took place in New York (see id. ¶¶ 151-60).  "Such conclusory statements[,]" which "offer no facts identifying specific conduct" or "actions in New York that gave rise to" ICICI UK's claims, "fall far short of the required prima facie case for personal jurisdiction over" the Defaulting Defendants in this case.  Cullum v. Wyndham Hotels & Resorts Corp., No. 22-CV-09700-LTS-SN, 2024 WL 552494, at *9 (S.D.N.Y. Feb. 12, 2024), reconsideration denied, No. 22-CV-09700-LTS-SN, 2024 WL 3104517 (S.D.N.Y. June 24, 2024).  Therefore, the Court does not have personal jurisdiction over ICICI UK's claims against the Defaulting Defendants and those claims against them must be dismissed.

Because the Court does not have personal jurisdiction over ICICI UK's claims against the Defaulting Defendants, the Court denies Plaintiffs' motion for default judgment as to ICICI UK's claims.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for default judgment.  The Clerk of Court is respectfully directed to enter judgment (1) dismissing ICICI NY's claims with prejudice, for failure to state claims upon which relief may be granted

(2) dismissing ICICI UK's claims without prejudice for lack of personal jurisdiction, and to close this case.  This Memorandum Order resolves docket entry no. 218.

SO ORDERED.

Dated: March 31, 2025
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge